Good morning. My name is John Groen. I'm the attorney for the appellants. I'm pleased to point out that my clients are the three individuals in the first row. And in the middle is Alice Dobson, who at 97 years old is still making it to the court appearances. Welcome to the Ninth Circuit, one and all. I'd like to reserve five minutes for rebuttal, please. Certainly. Just keep an eye on the clock, and when it counts down to five, wrap it up so you can save what's left. Thank you. All right. Turning to the attorney fee issue, this case is all about whether Maher v. Gagney, the U.S. Supreme Court decision, should be followed to award attorney's fees based on successful state court litigation. And in this case, just very briefly procedurally, the lawsuit as a whole was started back in 1996. That included state law tort claims, and it also included the substantive due process claim. Both of those were part of the original claim, all based on the same nucleus of facts, the same factual background. What did the jury return its $10.71 million verdict on? That was in state court on the state intentional interference with business expectancy claim. So tort claims, basically? The delay damages associated with delaying the process, the review process, by not issuing a threshold determination. But the district court later ruled that you had no substantive due process claim, which would be your constitutional claim on which attorney's fees would follow. Isn't that right? And we have two positions. Position number one on that is the district court never should have addressed any merits on the substantive due process claim because this case was resolved. It was dispositive in awarding all compensatory damages in the state court action. Remember, the district court split this case in two and sent the state claims back to state court and held the due process claim and stayed it pending resolution of the state court. But I guess what I'm struggling with, Mr. Groen, is as I read the case law, there has to be a nexus between a viable constitutional claim, which in this case was your substantive due process argument, and the attorney's fees. Yes, they may well arise out of common facts, but the fact that the jury, the state court jury in what was it, Snohomish County, returned an $11 million verdict on state law tort claims certainly doesn't bar the city under a collateral estoppel theory from wanting to relitigate or to have an opportunity to litigate the federal constitutional substantive due process claim in federal court. No, that's what MAHER is all about. The nexus that you're talking about, what is required, is that there be a common nucleus of operative fact between the fee-generating state claim, that's the $10 million verdict, there needs to be a common nucleus of operative fact between that claim and the fee-generating claim, which is due process. And we argue that that is very clear. Maybe we're saying the same thing, but is it your position that the jury verdict in Snohomish County necessarily established a substantive federal constitutional due process violation? No, that is not our position. Our position is that the state court litigation was dispositive of the case. There are no other damages to recover. Why is it dispositive, exactly? Because there are no damages to recover. There's no other compensatory damages available, and it's very clear, and these authorities are pointed out in the brief, that damages for the Section 1983 claim, substantive due process, are compensatory damages, the same tort damages. So there's nothing left to achieve in terms of damages by litigating due process. Okay, but do you have a case, most of the cases in the attorney's fees context that I've seen where the state claim was dispositive of the federal claim involved, usually some kind of injunctive relief. Is there a case that you've got where somebody got all the damages they wanted and therefore the court said we don't need to go on and reach the federal claim? Yes, and I provided several examples in the briefing. They are basically at about page 20, beginning at about page 24, through several pages after that. And let's go ahead and jump right to that then. One of the cases is Williams v. Thomas. This is a case where inmates brought a civil rights claim. He alleged also a state law assault and battery claim. So same thing. We've got two claims, state claim and a constitutional claim. He prevailed on the state claim, assault and battery. He did not prevail on the civil rights claim. That was not addressed. And the circuit court ruled that it was proper to award fees based on the non-fee state claim and then apply the doctrine of avoiding unnecessary adjudication of constitutional issues. And nevertheless, because of the Maher v. Gagne precedent, allowed fees. And it's very important. Because the plaintiff won all of the damages he wanted on the state law assault and battery claim? Yes. Well, because whether he got all the damages or not, I believe he did because it was one act. You know, he's alleging an assault, and so there's one act. And what's critical about that case is that the defendant, prison official, believed that they had a winning defense to the civil rights claim. They believed they had a good faith defense. And so they thought, well, this is unfair to not address civil rights but still allow attorney's fees. But that's exactly what Maher requires. In that case, though, I can see a direct correlation because the federal civil rights claim is an assault committed by state officers under color of law. And the jury returned a verdict for assault and battery in the state court. That's why I asked you at the outset whether the jury verdict, which as I understand it was a general jury verdict, on the state tort of intentional interference with business expectations is sufficient to establish a substantive due process violation. And that's where I'm having a hard time following your argument. That's not the test. The test is not whether the state court litigation satisfies and proves up the substantive due process test. The test coming out of Maher, which comes right out of the congressional legislative policy, is that the policy choice of Congress was to honor the judicial doctrine of avoiding unnecessary adjudication of constitutional issues between those two. But suppose the district court is right that you had no federal substantive due process claim here, that land use planning for whatever reason is different and it seems to me what you really have is a procedural due process claim that you were unnecessarily delayed because I think in order to establish substantive due process, you've got to show a property right here, entitlement to the permit. But let me finish the question. It takes me a minute to tease this out. But assuming that the district court was correct, that there is no such federal constitutional violation, then why are you entitled under Gagney to attorney's fees for a claim that would not bear attorney's fees if it were brought as a naked state law tort claim for interference with business expectancy? Okay, there's a lot of things in that statement, but I'll go to the last part. You can take them in any order you want. First, the district court is not correct that we failed to state a substantive due process claim. And we can get into that issue. But your question says, well, if it were correct, could they address it? The situation would be more analogous to if we stayed in state court, if the removal hadn't happened and the case hadn't been split into the state and federal, so that we were back in 1998 when we were heading to trial for the first time in Snohomish County, not 2005, in 1998. Both due process and intentional interference were before the court and were getting ready for trial. If the jury had both issues before it and had decided that the due process claim failed, we would be done. There would be no attorney's fees in that situation. But that is not what we have here. So this would be assuming that there were concurrent jurisdictions, which I think there is, to try a 1983 claim in state court. And that's the way we were originally going back in 1998. Both claims were before the court and would have been tried. But there was a settlement that later fell apart, and then the case was reopened back in 2004, and that's when it got removed and split. But how do we get around the fact that that wasn't the claim that the jury returned a verdict on in state court? Doesn't the Gerling case answer Judge Tomlin's question? I'm sorry, I didn't hear that. The Gerling? Gerling? G-E-R-L-I-N-G? I just read that last night and thought it seemed to bear particularly squarely on that question. Well, that case wasn't in the briefing, I don't believe. But I believe that is a case that is supportive of our position. That's what I'm suggesting. Yeah, my recollection is that that is the Ninth Circuit case, and it's very complicated facts. But my recollection is it went up on a petition for certiorari, and the U.S. Supreme Court only addressed specific issues that were not the fee-generating issues. After our court had ruled against the plaintiff on the fee-bearing claim. Exactly. And the court awarded fees. And so, yeah, it is supportive. It's like the other case that I mentioned, the Williams case. And there are other examples that I provide to you as well. Another one is the Williams v. Hanover Housing, different Williams case. First was Williams v. Thomas. Williams v. Hanover Housing is cited at page 25. And there, the district court basically did very similar to what our district court did and said, well, don't you have to have a ruling on substantive due process in order to get the fees? And the circuit court wrote, section 1988 itself, nowhere states that attorney's fees can be awarded only to those who prevail on expressly federal grounds. Plaintiffs have, in every practical sense, prevailed, having as a result of their lawsuit achieved precisely the end relief they wanted. That's exactly like our case. The quote continues. To uphold the district court's rationale, we would have to read into section 1988 an implied requirement that to be a prevailing party, it is necessary not only to have secured a significant objective of one's federal lawsuit, but to have done so by obtaining a favorable ruling on some federal or constitutional claim advanced in the suit. A theory akin to this was rejected 17 years ago. Let me ask you about Carreras, because that is a case you rely on heavily. Did the district court in that case rule against the plaintiff on the federal First Amendment claim? Carreras, I don't believe it ruled against on the federal claim. I think it was just one where it was not addressed. Carreras is important, though, because it does state the general rule without any qualification. Thinking back to the prior argument, it's just stated generally without any kind of qualification. Quote, when the plaintiff in a civil rights action prevails on a pendent state law claim, that's what we have here, on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under section 1988. And then Carreras quotes from Seals. Seals is the Seventh Circuit, quoted favorably in the Ninth Circuit. This same quote, this is from Seals. Quote, the state law claim upon which this litigation has now been terminated clearly involved a common nucleus of operative fact with plaintiff's federal constitutional claims. That's the test, common nucleus of operative fact. Under these circumstances, the district judge's holding on the 14th Amendment issue was unnecessary. Under Higgins, it was also undesirable, and that portion of the district court's opinion and judgment is vacated. Mr. Rohn, you wanted to save four minutes. You're down to two and a half. Well, I better save the time. All right. I do want to emphasize this is all very carefully laid out in the briefs, and I know it requires study. There's a lot of issues. The one thing I didn't find in the brief, though, is how much money are we talking about here? In attorney's fees? Yes. That will have to be determined. Give me a ballpark. We recognize. Mr. Rohn, just give me a ballpark. Are we talking about $1 million, $2 million? Oh, yeah. Substantial attorney's fees because this case went on for years and got ready for two trials. There's a lot of money involved. That will be its own litigation, I'm sure. Okay. Good morning, Your Honors. The main thing that I want to communicate is that Mr. Groen does not adequately deal with the case of Smith v. Robinson. Smith v. Robinson is the Supreme Court case that came out in 1983 following Maher v. Gagne in 1980. I think reflecting on Judge Tallman's question in particular, the rule of Smith clearly establishes either a third prong to the Maher v. Gagne test or it establishes a different view of substantiality from what is articulated in Maher v. Gagne. In Maher v. Gagne, it isn't. As I read the response on that point from your opponent, it was that Smith should be read to be looking at after you've applied the first two steps, then determining which fees are actually reasonably related so that it was a third step, if you will, but in allocating or determining what component of the fees fell within an award. So I don't think you had a chance to respond to that. Very well, Your Honor. The point that Your Honor makes is relating Smith to Hensley v. Eckerhart, and there is no question that Smith contains language that says that the rule of Gagne is not without qualification, and it goes on to say that one of the qualifications of the Smith v. Gagne rule is that a plaintiff should not be awarded fees on that portion of a penitent state law claim that doesn't support fees. But if you continue in the very next paragraph, Smith goes on to say that a similar analysis, so setting aside the Hensley v. Eckerhart consideration, a similar analysis is appropriate in a case like this where the prevailing party, I'm sorry, the prevailing plaintiffs rely on substantial unaddressed constitutional claims as the basis for an award of attorney's fees. The fact that constitutional claims are made does not render automatic an award of fees for the entire proceeding. Counsel, I'm sorry, where are you reading from? What page? 1007. Got it. Your Honor. That purpose, I'm quoting again, that purpose does not alter, and this is the key for Judge Gleeson in particular, that purpose does not alter the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success. We're no longer talking about apportionment between the pendant fees earned and the federal court fees earned. We're talking about when does Smith apply to support Marr, and the answer is it applies when there is something more than merely pendant jurisdiction. If you take a look at Smith v. Robinson, a Kansas District Court case, if you take a look at White Mountain Apache, if you take a look at Gerling or Carreras, you will find that there is now a consideration after Smith v. Robinson for more than simply establishing the existence of pendant jurisdiction. All you've got to have for pendant jurisdiction is a substantial federal question, and we submit that Mr. Groen's federal question may not have been substantial, but I recognize it for jurisdictional purposes, a very minimal threshold, a substantial federal question, and a common nucleus of operative facts, such that the parties would have been expected to try all the cases in one proceeding, the United Mine Workers. Smith changes that. Smith clearly says that in Smith in particular, the Supreme Court recognized there was a common nucleus of operative fact and that there was a substantial federal question, but fees weren't awarded. But I do think Smith is probably your best hope here, but I didn't read it quite the way you did. Just help me remember the context. I thought Smith was saying you had some earlier in the litigation, you had a fight over something or other that you won relief on, and I think the court actually did award fees for that. The litigation then proceeded on completely different claims involving completely different facts, completely different legal theories, seeking completely different relief, and the plaintiff was trying to get basically fees for the entire case just because they had won on that initial fee-bearing claim. And the court said, no, you don't get to do that. There has to be some reasonable relationship, and here there just wasn't for everything that came after. I guess I don't see the disconnect at all between the claim that the plaintiff prevailed on in state court and the substantive due process claim. That's the focus of our case. Very well, Your Honor. I think there is a considerable disconnect, and I'll be happy to articulate that. In Smith, you're correct, there is a complicated series of regulatory attacks on, in that case, special education funding laws, and there is this due process component regarding the impartiality of the hearing examiner who is to hear some of these administrative challenges. In the Supreme Court decision, the court recognized that the due process impartiality challenges weren't related because the plaintiff succeeded. They got, in this case, the child's special education paid for, and that was the relief they wanted. And so the Supreme Court said this child is growing up. As the case drags through the courts, he's getting his education fully funded. There's no reason for us to touch this due process on the partiality of the hearing exam. So what the court did there is it avoided the due process impartiality claim because it said these plaintiffs had gotten everything. That isn't applicable here, Your Honor. It's not applicable here primarily because the substantive due process claim in the district court has nothing at all to do with the facts or the relief that was obtained in the state court. It's also not clear that the ---- But the two claims arise out of the exact same set of facts, and they seek the exact same relief, which is why they're saying we got all the money we wanted. And I respectfully disagree, Your Honor, partly because in the state court ---- I'm sorry, in the substantive due process context, the plaintiffs would have potentially been entitled to injunctive relief. They would have been entitled to a vindication of their constitutional rights. They would have been entitled to punitive damages, none of which could be obtained in the state court tort claims. Further, though, Your Honor, the key from the city's point of view is there is no proof of a legitimate property interest, a legitimate protected property interest in the state court proceeding. But that goes to whether they have a meritorious claim. But just go back one step, though. You can see that the two claims, the state claim and the substantive due process claim, they arise out of the exact same occurrence, right? I really don't concede that because we don't know what the state court verdict was based on. Now, Mr. Groen points out there was this delay claim. But if the courts has access to the state appeals court decision, you will find that that was one prong of Mr. Groen's trial court theories. An entire separate prong was the claim that the city improperly or somehow duplicitously violated the Washington Open Public Meetings Act in claiming that the case had settled and then later determining that the case hadn't settled. That's a negligent interference of business expectancy. It's not the same thing. Wait, wait, wait. I looked at the jury instructions on the intentional interference claim in the state court, and they have nothing to do with what you just said. It's all about you improperly delayed for three years something that should have taken you 90 days, right? Well, the answer is, Your Honor, I don't think we know. And that's really – But in terms of that's what the jury instructions say? I recognize that's what the jury instructions say. But I don't think we know how the jury decided the case because all of these issues were in play. The Court of Appeals clearly recognized that the trial court record built heavily on this claim that the settlement agreement was improperly reached and that the jury found that there was a basis through the initiation of the settlement agreement to hold the jury inaccountable. We just don't know where the common nucleus is on any of those things relative to a substantial property interest or Monell liability that a city official policymaker caused what kind – we don't know what constitutional deprivation. That's the problem that Robinson tries to fix by going – Smith v. Robinson – by going beyond Marr and saying there has to be substantiality. What the Supreme Court is trying to do is find some assurance that before fees are shifted for a successful non-fee claim that there was some acknowledgement or some potentiality that the plaintiff's constitutional rights were damaged or harmed. If all you have is a common nucleus and a substantial claim and there's utterly no legal relationship at all, as I would suggest to Your Honor, is the case between common law tort claims, breach of duty causation, and a substantive land use claim in federal court, substantial protected property interest, absence of any legitimate government interest, you've got to have Monell liability. If you don't have any commonality legally between those things, you have no assurances. If you don't hear, you have no assurances that the Westmark constitutional rights were harmed. Then how do you explain Gerling or maybe I'm pronouncing it improperly? Because there our court actually said these claims have no merit. The only claims you could get fees on have no merit. That's right. And yet they got fees because there was a claim that they did prevail on in the Supreme Court. They prevailed on a non-fee bearing claim in the Supreme Court and the Supreme Court specifically avoided reaching the constitutional question. Right. At Gerling, you have. But my point there is simply you're saying we need some assurance that their substantive due process claim has merit. Well, in Gerling, we, the Ninth Circuit, knew that the claims had no merit and yet we still awarded fees. I disagree to some extent, Your Honor, because in Gerling the court is very specific to say that the substantiality test here was met because we struggled with this ourselves. It was actually Gerling 3 that came back on the fee issue. Gerling 1 and Gerling 2, the court is saying these are weighty constitutional questions. We're not sure. In fact, the court turned out to be wrong on some of those and the Supreme Court corrects that. And the key is the Supreme Court avoided the constitutional question. And when it comes back to the circuit, the circuit says, well, it's obvious that we shouldn't punish the plaintiffs because they are in the constitutional common nucleus of operative fact, they're in the constitutional substantiality, and they're suggesting that the constitutionality of their claims were tested and were advanced by the Supreme Court resolution of its view of the Holocaust Victim Insurance Relief Act. There is no assurance here. There is no assurance here that the constitutional interests of Mr. Gerling's clients were advanced in any way by succeeding on these state court tort claims. There's no commonality. And to get to my other point, where there's no avoidance, you don't have the Gerling fact pattern. There's no avoidance here. The district court did not choose to resolve this case on some state court grounds. Now, there are federalism issues here that complicate the matter. It's not quite like some of the other cases in Mr. Gerling's sites where you have a single enactment of Voting Rights Act case, the White Mountain Apache, you have Indian tribal sovereignty issues. Those are single enactment cases where it's fairly easy to say that if they advanced their non-fee-bearing claim, they demonstrated substantiality with respect to their fee-bearing claim. We don't have a single enactment here. We have this rolling sequence of events over the course of years and years and years where the position of Burien that the district court accepted is there were legitimate interests. And that's not a fact issue. That's an issue of law. If there was a legitimate state interest or a legitimate government interest that was being protected by Burien's conduct, there is no viable substantive due process claim. That's North Pacifica. It's Kawaoka versus Arroyo Grande. We're just in the anti-locknerization of substantive due process when the Supreme Court and the Ninth Circuit are saying these are not clearable claims. It's not that a land-use substantive due process claim doesn't exist. It can. There's almost no instances of it existing. And so here the district court says, I'm going to reach the issue. And they don't prevail. They lose. Matejko versus Felix where they're not just succeeding on the non-fee-bearing claim and the district court is avoiding the fee-bearing claim. So I hear you. I mean, if the court properly proceeded to rule on the merits, it's a much different case. I guess I'm stuck, though, on thinking that the court should never have gotten that far. And that Seals case, for example, maybe you could address that. Because the rule I read that case, the rule articulated by the court, I think it was the Sixth Circuit there, seemed very sensible. I'm not quite sure why we shouldn't adopt the same rationale here. Well, again, Your Honor, I think the difference is that in Seals you have a specific enactment. In Seals you have a voting scheme that is clearly, whether it is intended to or not, it has the effect of diluting minority voting. You have a specific target. You have a state law claim that it is not a legitimate way to proceed. You have a Voting Rights Act claim that bears fees. You have a 1983 claim that bears fees. The voting scheme has changed. It's changed so that the minority vote dilution problem is fixed. You have a clearly interconnected set of legal issues there, as would have been endorsed by Smith v. Robinson. And I think Seals actually precedes both Maher and Smith v. Robinson. But you can certainly harmonize this. You can also harmonize that with what the district court did here. Because you don't have any assurances, unlike the minority voters who were disenfranchised in Seals, who succeeded on their voting rights in that case. And I believe there was an issue of avoidance in Seals, too, for that matter. Unlike that, again, you have no assurances that the substantive due process claims that would bear fees were implicated by anything Burien did in this rolling series of events over 8, 9, 10 years, that unfortunately, or fortunately, the state court jury couldn't even pinpoint itself. And to that point, I want to ‑‑ Your Honor, I have a question. I'm stuck on the jury instructions for that claim just don't fit the description you just gave. They're focused very specifically, aren't they? Correct me if I'm wrong, but I remember them being focused very specifically on that three‑year delay in making whatever it's called, the provisional or temporary. I can't remember the term. Threshold determination. Threshold determination. Yeah, yeah. But consider this, Your Honor. The jury instructions are only there to allow the parties to argue their case. They don't define what goes to the jury. They're part of the instructions for the jury to consider the law. They tell the jury, you must find X, Y, and Z elements in order to rule for this plaintiff. And I thought the verdict form showed that they did rule for the plaintiff on that claim. It doesn't say they ruled for the plaintiff on that claim. Okay. It doesn't. It's a general verdict form. We don't know what they ruled for the plaintiff on. It could have been on that negligent misrepresentation claim. Absolutely, Your Honor. Absolutely. And even if it is on the SEPA delay, you've got in North Pacifica, you've got a clear statement from this court that you cannot get substantive due process because of a delay where environmental records are being requested. I mean, that's not a substantial claim. That's a nonexistent claim. There is no basis to award a substantive due process claim under any circumstances if that's the root of it. Counsel, you are out of time. I see that, Your Honor. If anybody has any further questions, I think Mr. Groen has a couple of minutes left. Thank you. With respect to Smith v. Robinson, I'm sorry. We just view this case very differently. I believe you can read Smith and very easily discern what's going on. The court in Smith was recognizing that you don't get all of your fees for an entire case. And in my brief at page 16, I point that out, that we are talking of the reply brief, that the quote that was just read to you talks about, in quote, the fact that constitutional claims are made does not render automatic an award of fees for the entire proceeding. That's what we're talking about. You can only get fees for the non-fee-generating claim that are reasonably related to the fee-generating claim. That makes sense. We agree with Smith. The problem is that Smith becomes relevant only once you decide that Westmark is entitled to fees. But let's hang on. Let's say that we knew, because there was a special verdict form, that you only had prevailed on the negligent misrepresentation claim, right? Okay. Would you say that that's not connected enough in the Smith sense to your substantive due process claim? Well, that argument would have to be made with respect to misrepresentation. There are arguments that can be made that only by going through the whole misrepresentation and all the litigation associated with that did the state tort claim on intentional interference ever get back to court. So there's arguments that can be made. I understand that they might have a pretty good argument that, no, those are not reasonably related because they have distinctly different facts. And that's what was pointed out in our brief. Do you agree with counsel that we have no basis from the state court record to know on which claim the jury awarded $10 million for? Well, I believe that where it's a general verdict form, that the assumption is they ruled on all of the claims. And so we prevailed on all of them. And they can't parse one versus the other. And the general verdict form was at Burien's request, and that was, I believe, for insurance purposes. But that general verdict form, that doesn't mean that the jury didn't rule on the first claim of intentional interference. They did. And, frankly, the amount of damages makes it very clear they ruled for Westmark on all of those claims that were before them, or they couldn't have got the damages that high. You sought less than $10 million on the negligent misrepresentation claim, you're saying? Well, you know, that trial, that was back in 2005. We sought actually greater damages. I think we were trying to proof up around $13 million, exactly how it breaks out. But you sought $13 million on the negligent misrep claim? No, no, overall, on all of them. Because they were combined. You know, the damages expert dealt with the entire length of time. And so you can't really parse it out. And so I've got a minute left. No, you're over by a minute. Oh, I'm over by a minute. I'll give you one sentence to wrap it up. All right. On the merits of the substantive due process claim, North Pacifica is clear that you can state a substantive due process claim based on delays where those delays are based on allegations that the defendant, the government agency, acted for reasons unrelated to legitimate government purposes. That's the common nucleus of operative fact that we rely upon. And I'll rely on the briefing for the rest. Thank you very much. The case just argued is submitted.
judges: Gleason, Tallman, Watford